IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| J. W. DUKES, #156 745, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-232-TMH |
| | ) | [WO] |
| C.O. JEROME OSBORNE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, a state inmate incarcerated at the Bullock Correctional Facility located in Union Springs, Alabama, filed this complaint on April 11, 2013. He brings this action pursuant to 42 U.S.C. § 1983 challenging matters associated with disciplinary proceedings filed against him in October 2012 for violating institutional rules prohibiting the use of or being under the influence of narcotics. Plaintiff names Warden Horace Burton, Sergeant M. D. Ginyard, and Correctional Officer Jerome Osborne as defendants. He seeks damages, injunctive relief, and court costs as a result of the alleged violations of his constitutional rights. Upon review of the complaint, the court concludes that it is due to be dismissed prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B).[1]

---

[1] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process, regardless of the payment of a filing fee, if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I. DISCUSSION

While incarcerated at the Frank Lee Community Based Facility Plaintiff was subjected to a drug screen. Because Plaintiff tested positive for the use of opiates, Defendant Osborne issued a disciplinary infraction against him for violating institutional rules against the use of, or being under the influence of, alcohol, narcotics, or other intoxicants. Plaintiff brings this action complaining that Defendants violated his due process rights in connection with the disciplinary proceedings because the original disciplinary report incorrectly noted the number, although not the description, of the rule he violated and because it also subjected him to removal from an institution where he was on work release status and returned him to a medium security level correctional facility. (*Doc. No. 1 and Exhs. A, B*.)

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low - to maximum - security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").

Thus, the deprivations about which Plaintiff complains, without more, do not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. at 484. This court must therefore determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the

ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying *Sandin*, the court concludes that the initial error in denoting the incorrect rule number on the disciplinary report did not violate any due process right to which Plaintiff is entitled. Nor, under *Sandin*, did Plaintiff's re-assignment to Bullock Correctional Facility from a less restrictive facility and/or classification level under the circumstances described, "though concededly punitive, . . . represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Id*. at 485. While more burdensome on an inmate, a transfer to a more secure facility is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at *225; Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution). In general, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on him ... the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460-461 (1989) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Consequently, Plaintiff's transfer from a correctional facility of his liking to a more restrictive facility which he does not like does not rise to the level of a constitutional violation. Because Plaintiff has not alleged deprivation of a protected liberty interest, his complaints in relation thereto fail to state a due process claim. *See Sandin* , 515 U.S. at 487; *Griffin v. Vaughn,* 112 F.3d 703,

706 (3rd Cir. 1997).

To the extent that Plaintiff asserts that he has a liberty interest in continued participation in a work release program and that he can not be removed from work release absent a due process hearing, such claim entitles him to no relief. The law is well settled that an inmate in the Alabama prison system has no liberty interest which entitles him to work release, *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988), nor does the Due Process Clause itself create a constitutionally protected interest in work release. *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates."); *Codd v. Brown*, 949 F.2d, 879 (6th Cir. 1991) (prisoners have no inherent due process interest in work release). That said, the court must still determine whether Plaintiff's removal from work release and placement in a medium custody facility imposed on Plaintiff the type of "atypical, significant deprivation" in which a state might create a liberty interest. *Sandin,* 515 U.S. at 486.

"[T]he baseline for determining [restraints which constitute the requisite atypical and significant hardship] is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction ..." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3rd Cir. 1997). "*Sandin* does not permit [a federal court] to compare the prisoner's own life before and after the alleged deprivation. Rather, [the court] must compare the prisoner's

liberties after the alleged deprivation with the normal incidents of prison life. *See Sandin*, 515 U.S. at 485-86, 115 S.Ct. 2293, 132 L.Ed.2d 418.... Since an inmate is normally incarcerated in prison, [the plaintiff's] return to prison [from institutional confinement in a halfway house] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Dep't of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999). An inmate summarily removed from a work-release program for various penological reasons and transferred to a medium security prison after having successfully participated in work release for four years did not possess a protected liberty interest in remaining in work release because confinement within the prison walls of the medium security prison constituted "an 'ordinary incident of prison life.' It is not 'atypical.' " *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (return of an inmate to prison after revocation of his work release status imposed neither an atypical nor significant deprivation under *Sandin* because prison is "not atypical of what inmates have to endure in daily prison life.").

Plaintiff's removal from work release status and transfer to a medium security facility did not impose "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, Plaintiff did not possess a liberty interest in his continued participation in the work release program and his claim in this regard is, therefore, due to be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaint be DISMISSED with prejudice and prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

It is further

ORDERED that on or before **August 12, 2013,** Plaintiff may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which Plaintiff objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 29th day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE